Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3088 | **DATE** | 1/6/2004 |
| **CASE TITLE** | Dean Gilbert vs. American Airlines, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment [96-1] is granted, as explained in the accompanying memorandum opinion and order. Further, as explained on the reverse side of this minute order, the following motions are denied: plaintiff's motion to strike certain matters from defendant's summary judgment pleadings [130-1]; plaintiff's motion to sanction defendant [120-1]; and plaintiff's supplemental motion to sanction defendant [121-1]. Case terminated.

(11) ■ [For further detail see order on the reverse side of the original minute order.] order attached to the original minute

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | 2 number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 07 2004 date docketed | 145 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 1/6/2004 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| hmb | courtroom deputy's initials | on JAN -7 AM 12: 35 | hmb7 mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEAN E. GILBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 01 C 3088 |
| | ) |
| AMERICAN AIRLINES, INC., et al. | ) |
| | ) |
| Defendants. | ) |

**DOCKETED**
**JAN 0 7 2004**

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Plaintiff Dean Gilbert, acting *pro se*, has sued his former employer, American Airlines, Inc. ("American"), as well as Ann McNamara, American's general counsel, and Neil Holman, Cardelle Braxton, and Denise Kraujalis, who are, respectively, a partner, an associate, and a legal assistant from Winston & Strawn, the law firm that represented American in previous lawsuits filed by Gilbert. In this litigation, Gilbert alleges that defendants unlawfully retaliated against him for filing an employment discrimination lawsuit against American, thus violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and 42 U.S.C. § 1981.[1] Additionally, Gilbert claims defendants unlawfully discriminated against him on the basis of his race. The

---

[1] When Gilbert filled out the form employment discrimination complaint, he checked boxes indicating that his claims also arose under the Age Discrimination in Employment Act and 42 U.S.C. § 1983. Section 1983 is clearly inapplicable because it provides a remedy only for actions taken under color of state law. *Mihalovits v. Vill. of Crestwood*, No. 00 C 897, 2003 WL 1745513, at * 3 (N.D. Ill. Mar. 31, 2003) (citing *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir. 1990)). As for the ADEA, Gilbert has not raised a single fact in his complaint or in opposition to summary judgment that could support a claim for age discrimination. These purported claims shall not be addressed further, particularly because Gilbert himself characterizes his lawsuit as raising claims for retaliation and racial discrimination only.

parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the court grants summary judgment in favor of defendants.[2]

I. **Summary Judgment Standard & Local Rule 56.1**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories,

---

[2]As part of his opposition to the motion for summary judgment, Gilbert complains that this court improperly refused to allow him to amend his complaint. Specifically, he contends that "[w]hen the plaintiff accepted leave of the trial court to amend his complaint, the Magistrate [Judge] refused to allow him to amend his complaint." (Pl.'s Resp. at 1.)

As an initial matter, Gilbert never sought, or obtained, leave from the district court to file an amended complaint. Rather, Gilbert filed his motion for leave to file the first amended complaint *after* discovery closed and *after* the parties consented to proceed before this court.

Gilbert is correct, however, that this court denied his motion for leave to amend. Gilbert filed that motion on October 17, 2002, seeking to add state law claims for intentional and negligent infliction of emotional distress, negligent hiring and retention, and a violation of the Illinois Consumer Fraud and Deceptive Practices Act. As the court explained when it denied that motion, the court would consider allowing him to amend only if his federal claims survived defendants' motion for summary judgment. This decision was well within the court's discretion. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (recognizing that lower court has discretion in determining whether to grant leave to amend). First, given that discovery had been closed for months, allowing Gilbert to add new state law theories would have required reopening discovery and further delaying the summary judgment motion that defendants were prepared to file, thus prejudicing defendants. *See Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982) (finding no abuse of discretion where discovery had been completed and amendment would add entirely new theory). Second, Gilbert offered nothing to suggest that his new theories of liability depended on newly discovered facts, or to otherwise explain the delay in raising his new counts. *See id.* Third, and most importantly, in seeking to amend the complaint, Gilbert was asking the court to exercise supplemental jurisdiction over the state law claims. (*See* Proposed First Am. Compl. at ¶ 1.) But a "federal court may, at its discretion, decline to exercise supplemental jurisdiction over state law claims that remain after dismissal of the claim over which the court originally had subject matter jurisdiction." *Sartor v. Spherion Corp.*, No. 02 C 4312, 2003 WL 22765049, at *6 (N.D. Ill. Nov. 21, 2003); 28 U.S.C. § 1367(c)(3). In fact, "[r]elinquishing pendant jurisdiction once federal claims are dismissed is the norm, not the exception." *Id.* (internal quotation marks omitted). Allowing Gilbert to amend earlier, reopening discovery, and delaying the motion for summary judgment, only to decline to exercise supplemental jurisdiction now would have been a complete waste of time and resources for both the court and the parties.

2

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant sets forth its argument, properly supported by the record, that there is no genuine issue of material fact requiring trial, the burden shifts to the nonmovant to identify specific facts that preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Further, in this district, all parties must comply with Local Rule 56.1 which governs motions for summary judgment. Local Rule 56.1 requires the movant to file a statement of material facts demonstrating why the movant believes it is entitled to judgment as a matter of law. This statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a)(3). The opposing party must respond to each numbered paragraph in the movant's L.R. 56.1(a)(3) statement. L.R. 56.1(b)(3). If the opposing party contests any fact set forth by movant, the opposing party must expressly state its disagreement and include "specific references to the affidavits, parts of the record, and other supporting materials" that establish the basis for the disagreement. *Id.* "All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The opposing party may also file a statement of any additional material facts demonstrating why summary judgment cannot be granted. *Id.* If the movant fails to properly controvert those additional material facts, they are

also deemed admitted. L.R. 56.1(a)(3).

Here, American properly filed its L.R. 56.1(a)(3) statement of material facts ("American's SUF" or "Am. SUF"). Although Gilbert filed a response, his response failed to comply with L.R. 56.1(b)(3). Rather than responding to each numbered paragraph with an admission or a denial supported by the record as required, Gilbert submitted an affidavit consisting of twenty numbered paragraphs asserting various "facts" without a single citation to support in the record. Even overlooking Gilbert's failure to comply with the rule and examining the substance of Gilbert's response, as it turns out, Gilbert's response lacks much substance. With the exception of paragraph 11, which sets forth Gilbert's version of a statement McNamara made to him in August 1998 (and effectively disputes paragraph 12 in American's SUF, setting forth McNamara's version of that same conversation), nothing in Gilbert's response serves to dispute any material fact in American's SUF. Indeed, many of the "facts" asserted in Gilbert's response, even if they were properly supported, are immaterial to the case at bar. (*See, e.g.*, Pl.'s Resp. to Defs.' L.R. 56.1 Statement ("Pl.'s SUF Resp."), ¶¶ 2, 5-10, 12-13, 19.)

Because of Gilbert's failure to adequately respond to American's SUF, with the exception of paragraph 12, all of the material facts set forth American's SUF are deemed admitted, provided they are properly supported by the record.[3] N.D. Ill. L.R. 56.1(b)(3); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). To the extent any statement in Gilbert's response can be

---

[3]Gilbert's *pro se* status does not excuse his failure to comply with Local Rule 56.1. In accordance with L.R. 56.2, American served Gilbert with a Notice to Pro Se Litigant Opposing Summary Judgment (also known as a *Timms* notice), explicitly explaining that his response had to comply with Fed. R. Civ. P. 56(e) and Local Rule 56.1, and stating that those rules could be found at any law library. N.D. Ill. L.R. 56.2; *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). Further, the Seventh Circuit has affirmed strict enforcement of L.R. 56.1 by the lower courts. *See, e.g., Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000).

4

considered a statement of additional fact,[4] the court will address such facts as necessary.

## II. Background[5]

Gilbert, who worked for American for less than nine months,[6] has not been employed by American since September 1986.[7] In March 1987, Gilbert filed a race discrimination charge with both the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging that American terminated him because he is African-American. In June 1989, Gilbert filed a complaint before the IDHR based on the 1987 charge. That proceeding was voluntarily dismissed in June 1996, over American's objection, before any ruling was issued on American's motion for summary decision. Gilbert subsequently obtained a right to sue letter from the EEOC, and initiated a Title VII claim for racial discrimination and retaliation in the Northern District of Illinois on May 28, 1998, *Gilbert v. American Airlines, Inc.*, 98 C 3263. On January 25, 1999, Judge Lindberg granted summary judgment in favor of American, finding that in addition to being time-barred, Gilbert was unable to establish a prima facie case of either racial discrimination or retaliation, and was also unable to show that American's articulated, non-discriminatory reason for its actions was pretextual. When Gilbert appealed that ruling, the Seventh Circuit affirmed Judge Lindberg's decision. *Gilbert v.*

---

[4] American treated Gilbert's response to its SUF as a statement of additional facts, and responded accordingly.

[5] The facts in the Background section are undisputed unless otherwise stated.

[6] American asserts that Gilbert was employed from February through September 1986. Gilbert disputes this time period, claiming he worked from January to February, then June through September. This dispute is immaterial to resolution of this litigation.

[7] Gilbert's belief that American re-activated his employment in 2000 will be addressed later in the opinion.

5

*American Airlines, Inc.*, 234 F.3d 1273 (7th Cir. 2000).[8]

Events that occurred during the litigation before Judge Lindberg and the subsequent appeal form the basis of the present litigation. In the summer of 1998, Judge Lindberg ordered the parties to participate in a settlement conference. After the first settlement conference failed, Judge Lindberg ordered McNamara, American's general counsel, to participate in a second settlement conference. According to Gilbert, at that second settlement conference "McNamara told [him] that American would obtain its costs and attorneys fees from him and use its vast resources to ruin his life the way it had ruined the lives of other female plaintiffs who were unsuccessful [in their claims]." (Pl.'s SUF Resp., ¶ 11.) Although McNamara's version of her statement to Gilbert differs significantly, for purposes of summary judgment, defendants concede Gilbert's version of the facts concerning that conversation. (Am.'s Resp. to Pl.'s Add'l Facts, ¶ 11.)

Later, while Gilbert's appeal of the summary judgment ruling was pending, he was erroneously billed for two Non-Revenue Space Available ("NRSA") flights that had actually been taken by two American employees. The first invoice Gilbert received, dated July 31, 2000, was for $20.54. The second invoice, dated September 30, 2000, was for the previously billed $20.54, plus a $7.53 charge for another trip, totaling $28.07.

The NRSA system, as relevant to this case, works as follows. American provides NRSA tickets to American employees and some former American employees.[9] Even though individuals

---

[8]This unpublished opinion is not cited as precedent, but rather, simply as part of the background of this case.

[9]Gilbert asserts that he knows of no former employees who still enjoy NRSA privileges. His lack of knowledge, however, is insufficient to dispute a fact set forth by American that is

6

using NRSA tickets may fly for free or at a reduced rate depending on various factors, they are generally assessed certain service charges, fees, and taxes. Former employees who retain their NRSA privileges are identified by their former employee identification numbers. Accordingly, American's computer system includes employee identification numbers for all former employees who are off-payroll, regardless of whether they have NRSA privileges. Recognition of a former employee's identification number by American's computer system does not depend on that individual having "active" employment status with the airline.

NRSA travelers use either paper or electronic tickets. During 2000, the paper tickets were sent for processing to a third-party vendor in Mexico, National Processing Company ("NPC"). Once the ticket information (employee identification number, ticket number, flight segment origin and destination, etc.) is entered into the computer, the information is transferred electronically to the NRSA facility in Tulsa, where the computer system determines the amount the employee or former employee should be charged. If the NRSA traveler is a former employee, a paper invoice is then sent to the last known address.

Gilbert's former employee identification number is 014732.[10] The first invoice he received, for $20.54, was for a flight taken by American employee S. Caballero, whose employee identification number is 414732. The second charge misbilled to him, for $7.53, was for a flight

---

supported by the record. N.D. Ill. L.R. 56.1(b)(3)(A); *Neal v. Ingalls Mem'l Hosp.*, No. 01 C 3939, 2003 WL 260675, at *1 n.3 (N.D. Ill. Feb. 5, 2003).

[10]Gilbert believes that being ticketed in 2000 for NRSA travel placed him on active employment status, and thus, that it is improper to refer to 014732 as his *former* employee identification number. "Such subjective beliefs of the plaintiff, however, are insufficient to create a genuine issue of material fact." *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989).

7

actually taken by American employee L. Marchand, whose employee identification number is 014733. In the Fall of 2000, while the appeal was pending, Gilbert raised the issue of the NRSA invoices with Holman, who in turn advised his client. American subsequently issued a third invoice to Gilbert, dated December 31, 2000, which showed a zero balance.

Gilbert believes that the invoices were not errors at all, but rather, were part of McNamara's threat to ruin his life—a threat which Gilbert also attributes to Holman. As explained in his complaint, to follow through on that threat, McNamara, Holman, Braxton and Kraujalis

> returned plaintiff's identity to American's payroll and fraudulently used it to create a fictitious record of plaintiff's travel on American Airlines. If the plaintiff was no longer employed by American Airlines, their record of plaintiff's [NRSA] travel on [American], as an employee, would have evinced an allegation of his theft of their services. Meanwhile, American threatened plaintiff with legal action and negative credit reports against him for not paying their manufactured billing of his travel on their airlines.

(Compl. ¶¶12-13.) On December 28, 2000, Gilbert filed a charge with the EEOC based on the erroneous NRSA billings, alleging unlawful retaliation and racial discrimination. The EEOC issued a right-to-sue letter on January 29, 2001. On April 30, 2001, Gilbert commenced this litigation.

### III. Analysis

Summary judgment is granted in favor of the defendants.[11] This decision is not even a

---

[11]For present purposes, the court assumes that the individual defendants should, in fact, be defendants, even though none of the individuals were named in Gilbert's December 28, 2000 complaint to the EEOC (and thus may well fall outside the scope of this litigation), and even though it is unlikely that they qualify as "employers" within the meaning of Title VII. American raised these issues as affirmative defenses, but opted not to address them in their motion for summary judgment.

close call. Gilbert has failed to establish a prima facie case of retaliation or racial discrimination, and even had he not failed that critical step, he also has failed to show that the legitimate reason proffered by American for its actions is pretextual.

A. **Retaliation**

The same liability standard applies to retaliation claims under Title VII and Section 1981. *Walker v. Abbott Labs.*, 340 F.3d 471, 474 (7th Cir. 2003). "[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Rogers v. City of Chicago*, 320 F. 3d 748, 753 (7th Cir. 2003). In a retaliation case, a plaintiff has two routes to prevent summary judgment: the direct method and the indirect method (*i.e.*, the *McDonnell Douglas* method). *Id.* Under the direct method, there are two forms of permissible evidence, direct and circumstantial. *Id.* Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (internal quotation marks omitted). There is no such admission here. Circumstantial evidence, "*i.e.*, evidence that allows a jury to infer intentional discrimination by the decisionmaker," *id.*, is also lacking. Gilbert filed his discrimination charge in 1987, followed by the employment discrimination lawsuit in 1998, yet it was not until the Fall of 2000 that any of the allegedly retaliatory conduct occurred. "[M]ere temporal proximity" between filing a discrimination charge and the alleged retaliation is rarely sufficient to defeat summary judgment, *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F. 3d 640, 644 (7th Cir. 2002)—and here, Gilbert cannot even claim temporal proximity, given the more than two year gap between initiating litigation and the alleged retaliation (not to mention the thirteen year gap between filing

9

his initial complaint and the alleged retaliation).[12] *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (20 month gap insufficient: "temporal proximity must be 'very close'"); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient).

Because Gilbert cannot defeat summary judgment under the direct method, he is left with the *McDonnell Douglas* method, which is "designed to give plaintiff a boost when he has no actual evidence of [retaliation] but just some suspicious circumstances." *Stone*, 281 F.3d at 643. To establish a prima facie case of retaliation under the *McDonnell Douglas* method, a plaintiff normally must show that: (1) he engaged in statutorily protected activity; (2) his job performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who did not engage in statutorily protected activity received more favorable treatment than he did. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Because Gilbert alleges post-discharge retaliation, however, the job-performance element seems inapplicable (as American suggests). *See Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) (allowing post-discharge retaliation claims under Title VII); *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995) (explaining that prima facie case is a flexible standard). As for the adverse-employment-action element, although Gilbert was no longer an employee at the time the alleged retaliation occurred, post-discharge retaliation claims are actionable when the complained of conduct "impinges on [a plaintiff's] future employment prospects or otherwise has a nexus to

---

[12] Although the gap between Gilbert's filing of the original litigation and McNamara's alleged threat was only about 3 months, the allegedly retaliatory action did not occur until more than two years later.

10

employment[.]"[13] *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996). Thus, for example, a criminal complaint filed by an employer against a former employee can constitute the requisite adverse action. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996).

Failure to establish any element of a prima facie case dooms a plaintiff's retaliation claim. *Hilt-Dyson*, 282 F.3d at 465. In the event a plaintiff is able to establish a prima facie case, "the employer must offer a legitimate, noninvidious reason for the adverse employment action." *Id.* "Once the employer has done so, the burden of production shifts back to the plaintiff to demonstrate the pretextual nature of the proffered reason." *Id.* In this context, pretext means "a lie, specifically a phony reason for some action." *Vakharia v. Swedish Covenant Hosp.*, 190 F. 3d 799, 807 (7th Cir. 1999) (internal quotation marks omitted). If the plaintiff is unable to establish pretext, his retaliation claim cannot get past summary judgment. *Hilt-Dyson*, 282 F.3d at 465.

Here, Gilbert has failed to establish a prima facie case. American concedes for purposes of this motion that Gilbert engaged in protected activity when he filed his original complaint of discrimination in 1987 and again when he initiated litigation in 1998. But the adverse actions he complains of are not sufficiently severe to be actionable. *See Oest v. Ill. Dep't of Corr.*, 240 F. 3d 605, 612 (7th Cir. 2001) (adverse action must be "materially adverse" to be actionable). Gilbert's theory is that after McNamara and Holman threatened to ruin his life in the summer of

---

[13] Although the Seventh Circuit has stated (in dicta) that a retaliation claim need not necessarily involve an adverse employment action to be actionable, *see, e.g., Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002), the Seventh Circuit has not indicated in any published opinions how a plaintiff would proceed under the *McDonnell Douglas* method under such circumstances. This court need not resolve that issue, however, because, as explained below, even if Gilbert could establish a prima facie case of retaliation, he has failed to show that American's proffered legitimate reason for its actions was pretextual.

1998, they followed through on the threat by arranging to have him misbilled for NRSA travel two years later. The undisputed facts, however, fail to support his theory. The undisputed evidence shows that neither McNamara nor Holman knew anything about the misbilling until after it occurred. (Am. SUF, ¶¶ 54-55). Likewise, the undisputed evidence shows that neither Bratton nor Kraujalis had anything to do with the misbillings. (*Id.* at ¶¶ 59-63.) Indeed, it is undisputed that they did not know about the misbillings until after Gilbert filed this lawsuit. (*Id.* at ¶ 64.) So even assuming that McNamara and Holman made the alleged threat, Gilbert has offered no evidence that McNamara or Holman (or anyone else, at their direction) ever acted on that threat. An unfulfilled threat is insufficient to constitute an actionable adverse action. *See Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 704 (7th Cir. 2001) (threats that "never materialized or resulted in any harm" were "too petty and tepid" to be actionable); *Glaser v. Levitt*, No. 98 C 210, 2000 WL 1038135, at *4 (N.D. Ill. July 24, 2000) ("unfulfilled threat . . . not an actionable adverse employment action").

Similarly, Gilbert cannot ground his claim on the fact that he was misbilled for $28.07. The misbilling—which was rectified long before Gilbert filed suit—was a mere inconvenience. *See Oest*, 240 F.3d at 612 ("mere inconvenience" does not rise to level of an actionable adverse action). This is "not the sort of employee grievance[] with which the . . . federal courts should be burdened." *Drake v. Minn. Mining & Mfg. Co.*, 134 F. 3d 878, 886 (7th Cir. 1998). Moreover, the court fails to understand how the misbilling "impinges on [Gilbert's] future employment prospects or otherwise has a nexus to employment[.]" *Veprinsky*, 87 F.3d at 891. Gilbert also claims in his complaint that American "threatened plaintiff with legal action and negative credit reports against him for not paying [its] manufactured billing of his travel on [the airline]."

12

(Compl. ¶¶12-13.) However, even assuming such a threat has the requisite employment nexus (which is unlikely), Gilbert offers no evidence to substantiate his allegations.[14] For that matter, even if there were evidence that such a threat had been made, at best, it would constitute another unfulfilled threat: it is undisputed that American neither reported Gilbert to any credit agencies nor instituted legal action against him to collect the $28.07. Gilbert has nothing to substantiate his belief that he suffered an adverse action. Additionally, he makes no attempt to show that other similarly situated employees who did not engage in protected activity received better treatment than he did. Gilbert thus fails to establish a prima facie case of retaliation.

Furthermore, even if Gilbert could set forth a prima facie case, American proffers a legitimate, noninvidious reason for the misbilling: it was a mistake. Gilbert was billed for flights taken by two American employees as a result of human error that occurred when NPC, the third party vendor, processed the NRSA tickets. The burden thus shifts back to Gilbert to show that the proffered explanation is pretextual—*i.e.*, that it is a lie. *Hilt-Dyson*, 282 F.3d at 465; *Vakhania*, 190 F.3d at 807. Gilbert can survive summary judgment only if he shows there is a disputed issue of material fact on the issue of pretext. To do so, he must either provide direct evidence showing that defendants were more likely than not motivated by a retaliatory reason, or indirect evidence "showing that the defendants' stated reasons are not credible." *Alexander v. Wisc. Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001).

Gilbert believes American is lying. Lacking any direct evidence to support his belief, he

---

[14]Under some circumstances, when an invoice for NRSA travel remains unpaid, American sends a follow-up letter stating that the debt may be sent to a collection agency. But it is undisputed that none of the invoices Gilbert received made any reference to a collection agency.

13

must come forward with indirect evidence which shows either that defendants are lying or that their stated reason has no basis in fact. *Id.* at 683. In an attempt to meet his burden, Gilbert asserts that it is incredible to think that he was erroneously billed twice "when the accuracy level of billing of NSRA ticketing was 98.5%."[15] (Pl. Resp. at 3.) The fact that errors are relatively rare, however, does not establish that American's proffered reason is a lie. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001) (pretext means "more than an unusual act"; it "means deceit to cover ones tracks"). It is undisputed that: (1) during 2000, NPC processed an average of 225,000 tickets per month; (2) entering the relevant information into the database requires an average of 24 keystrokes, for a total of approximately 5,400,000 keystrokes per month; (3) entering the employee identification number requires six keystrokes, resulting in approximately 1,350,000 keystrokes (out of the total 5,400,000 keystrokes); and (4) five of the six digits in both Marchand's and Caballero's employee identification numbers (014733 and 414732, respectively) match the corresponding digits in Gilbert's former employee identification

---

[15]Gilbert raises other unpersuasive arguments that warrant little, if any, discussion. For example, the fact that other individuals could have, but did not, offer affidavits setting forth their knowledge relating to the misbilling (*e.g.*, Caballero, Marchand, and the NPC person who made the errant keystrokes) does nothing to establish pretext, despite Gilbert's argument to the contrary. American offered an affidavit from Wade Lennon, a manager at American who examined American's records to ascertain why Gilbert was billed for NRSA travel when he had no NRSA privileges. American has no obligation to offer evidence from every person with relevant knowledge.

Gilbert also contends that even after American credited him for the NRSA travel, he was led to believe the retaliation would continue through defendants' access to his open account. Given Gilbert's utter failure to offer any evidence to support this argument, compounded by the lack of evidence that the alleged retaliation continued, the court finds this argument meritless.

Additionally, Gilbert states that he need only present a short and plain statement of the facts. This argument is wholly misplaced, confusing the difference between what is necessary to state a claim (a short and plain statement of the facts) and what is necessary to survive summary judgment (identifying specific facts, supported by the record, which establish the existence of a disputed issue of material fact, thus precluding summary judgment).

number (014732). As American points out, an average accuracy rate of 98.5% still allows for 243,000 errors in inputting employee identification numbers over a one year period.[16] Given Gilbert's failure to offer any substantive evidence to rebut American's proffered explanation, no rational trier of fact could conclude that American's stated reason for the misbilling—*i.e.*, that it was a mistake—is a lie. *Alexander*, 263 F.3d at 683. Summary judgment is therefore granted in favor of defendants on Gilbert's retaliation claim.

**B.    Racial Discrimination**

In opposing the motion for summary judgment, however, Gilbert asserts that he also raised a racial discrimination claim. The court assumes that Gilbert's intended point is that even if his retaliation claim does not survive summary judgment, he still has a racial discrimination claim. That is not the case. Although Gilbert's EEOC charge and complaint assert racial discrimination in addition to retaliation, his factual allegations can be reasonably construed only as a claim for unlawful retaliation against Gilbert for pursuing the prior litigation. A plain, unconstrained reading of the complaint simply offers no basis for an employment discrimination claim based on race. *See Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 477 (7th Cir. 1999) (body of complaint failed "even to hint at retaliation, much less develop a factual basis for such a claim"). It is undisputed that Gilbert has not been an American employee since 1986.[17] Events that took place between 1998 and 2000—a time when he was neither an employee nor an

---

[16] $(1{,}350{,}000)(12) = 16{,}200{,}000;\ 1.5\%(16{,}200{,}000) = 243{,}000.$

[17] Gilbert has already litigated his employment discrimination claims against American based on his discharge in 1986, which he lost on summary judgment. He is barred by res judicata from relitigating complaints relating to his brief employment with American. *See Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995).

15

applicant for employment—cannot support a claim that Gilbert suffered an adverse employment action because of his race.

IV. **Conclusion**

The court therefore grants summary judgment in favor of defendants and against Gilbert, and terminates this case. Finally, given the frivolous nature of this litigation, and the fact that Gilbert has been litigating issues relating to his employment with American since 1987 without any evidentiary support for his claims, the court asks the Executive Committee to consider barring Gilbert from filing further *pro se* complaints against American, its employees, its lawyers, or anyone else relating to the set of facts that formed the basis for either this case or *Gilbert v. American Airlines, Inc.*, 98 C 3263 (his original litigation against American) unless he first obtains leave of court to do so.

NAN R. NOLAN

United States Magistrate Judge

Dated: January 6, 2004

16

# ORDER

Plaintiff Dean Gilbert filed a motion to strike certain matters from defendants' summary judgment pleadings. The material he wants stricken includes various statements in the defendants' memorandum in support of its motion for summary judgment and/or defendants' statement of material facts relating to prior litigation between the parties. Gilbert contends that because he was not allowed discovery in this case relating to the prior litigation, it is unfair for defendants to now raise facts relating to the prior litigation in the motion for summary judgment. He further contends that by including such materials, "defendants are demonizing the plaintiff and making an emotional appeal to the trier of fact." (Pl.'s Mot. to Strike at 1.) Defendants oppose the motion to strike. First, defendants state that all challenged statements were culled from public documents filed or issued in connection with the prior litigation, and thus, Gilbert had complete access to information relating to them. Second, they argue (among other points) that the public facts about the prior litigation are material both to show (1) what statutorily protected activity Gilbert claims to have engaged in, and (2) the temporal proximity (or lack thereof) between Gilbert engaging in protected activity and the alleged retaliation.

The court finds no reason to strike the challenged material, and thus denies plaintiff's motion. As an initial matter, plaintiff's motion to strike purports to be a Rule 12(f) motion, but that rule is inapplicable. Rule 12(f) authorizes a court to strike "from any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f) (emphasis added). Rule 12(f) applies only to pleadings, however, and neither motions for summary judgment nor statements of material fact constitute pleadings. *See, e.g., Deboer v. Vill. of Oak Park*, No. 98 C 2437, 1999 WL 691845, at * 1 (N.D. Ill. Aug. 25, 1999); *Equal Employment Opportunity Comm'n v. Admiral Maint. Serv. L.P.*, 174 F.R.D. 643, 646 (N.D. Ill. 1997) (collecting cases). Thus, Rule 12(f) is "not the proper vehicle" for Gilbert's request. *Deboer*, 1999 WL 691845, at *1. Of course, it is not unusual for parties to file motions to strike materials relating to summary judgment—just not under Rule 12(f).

Regardless, for any motion to strike, the court has discretion to grant or deny the motion. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, (7th Cir. 2003) (refusal to strike summary judgment materials reviewed for abuse of discretion); *Videojet v. Sys. Int'l, Inc. v. Inkjet, Inc.*, No. 95 C 7016, 1997 WL 124259, at *3 (N.D. Ill. Mar. 17, 1997) (court has "considerable discretion . . . and, as a general matter, motions to strike . . . under Rule 12(f) are disfavored"). The court finds many of the challenged facts relating to the prior litigation are indeed material, for the reasons set forth by plaintiffs. More importantly, there is nothing scandalous or prejudicial in the challenged material. Even if some of the challenged facts are redundant or superfluous, this court is capable of considering, and indeed has considered, only those facts necessary to resolve the summary judgment motion.

Plaintiff also filed a motion (and supplemental motion) for sanctions, asserting that defendants, through their attorney: (1) failed to submit a privilege log; (2) failed to include in the Rule 26(a)(1)(A) disclosures the addresses and phone numbers for all individuals likely to have discoverable information; (3) improperly categorized documents in the Rule 26(a)(1) disclosures; and (4) made improper objections and otherwise obstructed the deposition of Robert Taylor. For the reasons set forth below, the court denies the motion for sanctions.

Regarding the privilege log, according to defendants no privileged documents were withheld, other than documents created by litigation counsel after litigation commenced. Defendants contend they had no obligation to provide a log regarding those post-litigation documents created by litigation counsel, relying on *Sphere Drake Insurance Ltd. v. All American Life Insurance Co.*, 221 F. Supp. 2d 874, 886 (N.D. Ill. 2002), a case in which the court allowed a party to omit from the privilege log any documents authored by litigation counsel during the case. This court need not, and does not, address whether the *Sphere* court created a general rule applicable to all cases. But given *Sphere*, defendants at least had a reasonable basis to believe a privilege log was not necessary. Accordingly, if the court were inclined to provide relief to plaintiff, it would order defendants to produce a privilege log, not sanction them. At this point, it would be pointless to order production of a privilege log because the court has granted summary judgment for defendants.

As for the home addresses and phone numbers of witnesses plaintiff claims were withheld, Rule 26(a)(1)(A) requires only disclosure of contact information (if known), not disclosure of *home* contact information. Fed. R. Civ. P. 26(a)(1)(A). Here, defendants identified two categories of witnesses in their Rule 26(a)(1)(A) disclosures: American employees and employees/partners at Winston & Strawn. Defendants provided a business address for each witness, and further indicated that the witnesses could be contacted through defendants' counsel. Plaintiff was given a means to contact all witnesses, which is both sufficient and shows the lack of prejudice to plaintiff. Nor is there a problem with the way defendants categorized documents identified in their Rule 26(a) disclosures, despite plaintiff's contention to the contrary. As for plaintiff's last complaint, regarding the Taylor deposition, plaintiff offers no evidence of any sanctionable conduct by defendants' counsel.

The motion for sanctions is therefore denied.